O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFREDO DUARTE,<br><br>    Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    Defendant. | Case No. CV 15-2240-KES<br><br>MEMORANDUM OPINION AND ORDER |

  Plaintiff Alfredo Duarte appeals the final decision of the Administrative Law Judge ("ALJ") denying his application for Disability Insurance Benefits ("DIB"). For the reasons discussed below, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's impairments did not meet the requirements of Listing 1.04, and the ALJ gave clear and convincing reasons for discounting Plaintiff's credibility. The ALJ's decision is therefore AFFIRMED.

## I.
## BACKGROUND

  On December 5, 2011, Plaintiff filed an application for DIB, initially

alleging disability beginning in August 28, 2010, but then changing the onset date to September 28, 2010. Administrative Record ("AR") 133-34, 135. He alleges that he is unable to work due to pain in his low back, legs, knees, shoulder, and arm; headaches; sleep apnea; stress; and depression. AR 147.

On June 27, 2013, an ALJ conducted a hearing, at which Plaintiff, who was represented by counsel, appeared and testified, as did a vocational expert ("VE"). AR 69-100.

On July 13, 2013, the ALJ issued a written decision denying Plaintiff's request for benefits. AR 27-36. The ALJ found that Plaintiff had the severe impairments of degenerative disc disease, obesity, right knee grade II posterior horn of medical meniscus, and left knee grade II posterior horn of medical meniscus and grade III posterior horn of the lateral meniscus. AR 29. Notwithstanding his impairments, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform "less than the full range of light work" with the following additional exertional limitations:

> [Plaintiff] could lift and carry ten pounds frequently and twenty pounds occasionally. He could sit, stand and walk, each, for six hours out of an eight-hour workday; could occasionally climb ramps and stairs, balance and stoop, and could never climb ropes, ladders and scaffolds, kneel, crouch or crawl. He could occasionally reach overhead with the bilateral upper extremities and could frequently reach to shoulder level with the bilateral upper extremities, handle and finger. He is to avoid concentrated exposure to hazards. He is limited to simple routine, repetitive tasks, with only simple work related decisions and few workplace changes.

AR 30.

Based on the VE's testimony, the ALJ found that Plaintiff could perform

work as a counter rental clerk (Dictionary of Occupational Titles ("DOT") code 249-366-010), cashier II (DOT code 211-462-010), addressor (DOT code 209-587-010), inspector (DOT code 726-684-050), and assembler (DOT code 713-687-018).  AR 35.  The ALJ thus found Plaintiff was not disabled.  Id.

## II.
## ISSUES PRESENTED

The parties dispute whether the ALJ erred in:

(1) determining that Plaintiff's impairments did not meet Listing 1.04 at step three; and

(2) discounting Plaintiff's testimony concerning the severity and limiting effects of his pain.

## III.
## DISCUSSION

**A.   Substantial Evidence Supports the ALJ's Conclusion That Plaintiff's Impairments Did Not Meet Listing 1.04.**

Plaintiff contends that the ALJ erred in finding that Plaintiff's degenerative disc disease did not meet Listing 1.04(A).  Dkt. 21 at 5-11, 15-16.  The ALJ considered this listing and rejected Plaintiff's argument, as follows:

> The evidence does not support that the claimant has the severity of symptoms required either singly or in combination to meet or equal a medical listing, including those found under medical listing 1.02, and 1.04.  No treating or examining physician has recorded credible findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment of the Listing of Impairments.  A more detailed

3

discussion to support this finding follows.[1]
AR 30.

### 1. Applicable Law

At step three of the sequential evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or medically equal a Listing. See 20 C.F.R. § 404.1520(d); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). Listed impairments are those that are "so severe that they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform his past relevant work or any other jobs." Lester v. Chater, 81 F.3d 821, 828 (9th Cir. 1995).

The claimant has the initial burden of proving that an impairment meets or equals a Listing. See Sullivan v. Zebley, 493 U.S. 521, 530-31 (1990). "To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim." Tackett, 180 F.3d at 1099. "To equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment 'most like' the claimant's impairment." Id. (quoting 20 C.F.R. § 404.1526). Medical equivalence, moreover, "must be based on medical findings;" "[a] generalized assertion of functional problems is not enough to establish disability at step three." Id. at 1100.

An ALJ "must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." Lewis v.

---

[1] The ALJ's "more detailed discussion" is at AR 30-34. The Court has not quoted that discussion in full here, but discusses it in relevant part in the Court's analysis, below.

Apfel, 236 F.3d 503, 512 (9th Cir. 2001). The ALJ need not, however, "state why a claimant failed to satisfy every different section of the listing of impairments." Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) (finding that ALJ did not err in failing to state what evidence supported conclusion that, or discuss why, claimant's impairments did not satisfy Listing). Moreover, the ALJ "is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005) (citing Lewis, 236 F.3d at 514).

For some impairments, the evidence must show that the impairment has lasted for a specific time period. 20 C.F.R. §§ 404.1525(c)(4), 416.925(c)(4). "For all others, the evidence must show that [the] impairment(s) has lasted or can be expected to last for a continuous period of at least 12 months." Id. If a claimant's impairment meets or equals a listed impairment, he or she will be found disabled at step three without further inquiry. 20 C.F.R. §§ 404.1520(d), 416.920(d).

An ALJ's decision that a plaintiff did not meet a Listing must be upheld if it was supported by "substantial evidence." See Warre v. Comm'r Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997) (internal quotation marks omitted). When evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's conclusion as long as substantial evidence supported it. Id.

**2.   Analysis**

In order to meet Listing 1.04(A), Plaintiff must present evidence of a

disorder of the spine resulting in compromise of a nerve root or the spinal cord with "evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04(A).

Here, the ALJ found that Plaintiff had the severe impairment of degenerative disc disease but that he had not submitted credible evidence satisfying each of the requirements in Listing 1.04(A). AR 29-30.

Plaintiff argues that the ALJ should have found that his degenerative disc disease met or equaled Listing 1.04(A) based primarily on four pieces of evidence: (1) multiple MRIs of the neck and lower back from 2009 and 2013 showing degenerative spine changes, Dkt. 21 at 6-7 (citing AR 299, 548, 677); (2) a February 22, 2011 consultative examination by neurologist Dr. Moossa Heikali reporting results of an electrodiagnostic study that found a decreased range of motion in the lumbar spine, decreased pinprick sensation over both lower extremities, and revealed "possible left S1 radiculopathy,[2]" id. (citing AR 217-219); (3) Plaintiff's allegations of pain, id. at 8 (citing AR 216-17, 232, 235); and (4) examination notes from chiropractor Dr. Bryan Aun on January 13, 2009, showing Plaintiff had a limited range of motion in the cervical and lumbar spines and a positive bilateral straight-leg raise test, id. at 9 (citing AR 222).[3]

---

[2] According to Plaintiff's briefing, "[r]adiculopathy is a condition due to a compressed nerve in the spin[e] that can cause pain, numbness, tingling, or weakness along the nerve." Dkt. 21 at 7.

[3] According to webmd.com, "To do this test, you lie on your back with both legs straight. Your health professional raises one of your legs upward, keeping the knee straight. … If you have pain down the back of your

The Court disagrees. Here, the ALJ thoroughly summarized the medical evidence, including the four pieces of evidence on which Plaintiff relies. He then explained his reasons for crediting or discounting certain pieces of evidence. After weighing the evidence, he concluded that the severity of Plaintiff's condition was not supported by the objective medical findings in the record. AR 29, 31-34.

Specifically, the ALJ referenced an electroencephalogram from March 2, 2011, that was normal. AR 32 (citing AR 214). He explained that a cervical spine x-ray from February 19, 2013, showed only mild degenerative joint disease, a thoracic spine x-ray on the same date revealed "mild generalized degenerative joint disease involving the disc spaces with questionable mild cardiomegaly," a lumbar spine MRI on April 2, 2013, revealed mild degenerative changes, a thoracic spine MRI on April 4, 2013, showed small disc bulges, and a May 21, 2013 cervical spine MRI revealed "mild central canal stenosis," "minimal central canal stenosis," "multilevel moderate to severe foraminal stenosis," and "mild degenerative disease at C5-C6." AR 32-33 (citing AR 546, 548, 608, 611, 677). Additionally, as Plaintiff himself points out, the 2011 electrodiagnostic study suggested only a _possible_ left S1 radiculopathy – a condition not detected by later tests in 2013.

After reviewing and summarizing the medical evidence, and noting the mild-to-moderate findings in the record, the ALJ properly determined that

---

leg below the knee when your affected leg is raised, the test is positive (abnormal). It means that one or more of the nerve roots leading to your sciatic nerve may be compressed or irritated." See http://www.webmd.com/a-to-z-guides/straight-leg-test-for-evaluating-low-back-pain-topic-overview. Plaintiff cites several instances in the record from 2009, 2012, and 2013 that reveal positive straight-leg raise tests. See Dkt. 21 at 9, 15 (citing AR 222, 223, 250, 263, 524, 538, 553, 559). The record, however, also contains a negative straight-leg raise test in Dr. Heikali's 2011 report. AR 310.

Plaintiff's condition did not satisfy all of the criteria in Listing 1.04(A). See AR 31-33; see also Cavalic v. Colvin, No. 15-0234, 2015 WL 5243881, at *4 (D. Ariz. Sept. 9, 2015) (finding that ALJ did not err in determining that claimant's degenerative disc disease did not satisfy Listing 1.04 based on mild-to-moderate findings in medical evidence of record); Cass v. Colvin, No. 14-5847, 2015 WL 3407185, at *3 (W.D. Wash. May 22, 2015) (holding that ALJ properly found that claimant did not meet Listing 1.04 at step three in part because evidence including MRI, electrodiagnostic evaluation, and testing showed mild-to-moderate abnormalities).

Moreover, the ALJ properly considered and resolved any conflicts in the medical opinions. See Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) ("When presented with conflicting medical opinions, the ALJ must determine credibility and resolve the conflict."). The ALJ pointed out that Dr. Rocely Ella Tamayo, whose opinion he accorded "great weight," concluded that Plaintiff could perform a range of light work. AR 34. On February 1, 2012, Dr. Tamayo performed a consultative examination on Plaintiff and opined that he suffered from low back pain and some difficulty with walking, sitting, getting up from sitting, bending, and lifting. AR 32 (citing AR 373-77). She concluded that Plaintiff "is able to lift 20 pounds occasionally and 10 pounds frequently because of his back conditions. He will be able to stand and walk six out of an eight-hour work period with normal breaks. He is able to kneel, squat, and sit without restrictions." AR 377. In relying on Dr. Tamayo opinion, the ALJ noted that she examined Plaintiff in-person, supported her opinion with "objective, medically acceptable clinical and laboratory diagnostic techniques," cited specific facts, and her conclusion that Plaintiff could perform work with light limitations was largely consistent with the record as a whole. AR 34.

Finally, while Plaintiff points to a few instances in the record when he

experienced a level of impairment that may meet Listing 1.04 (Dkt. 21 at 6-9, (citing 216-19, 235, 250-51, 289, 299, 326, 548, 659, 677)), he failed to show that the impairment lasted, or was expected to last, for a continuous period of 12 months or more, as required by the regulations. See 20 C.F.R. § 404.1509; Tackett, 180 F.3d at 1098.

In sum, when the record as a whole is considered, Plaintiff has not met his burden of demonstrating that his impairments met the criteria of Listing 1.04(A). The ALJ reviewed the medical evidence in detail and correctly found that Plaintiff's impairments did not meet Listing 1.04(A). Remand is therefore not warranted on this basis.

**B.    The ALJ Gave Clear and Convincing Reasons for Discounting Plaintiff's Credibility.**

Plaintiff claims that he suffers from low back, leg, knee, shoulder and arm pain, as well as headaches. Dkt. 21 at 16. Because of the pain, he can only walk for 30 minutes, sit for 30-35 minutes at a time, and carry 20 pounds after which he feels debilitating pain. Dkt. 21 at 16-17. He alleges that he has about two to three "good days" per month, and the rest of the time he feels "real bad pain." Dkt. 21 at 17.

Plaintiff contends that the ALJ erred in assessing his credibility concerning the limiting effects of his pain. Dkt. 21 at 16-22, 27.

**1.    Applicable Law**

An ALJ's assessment of symptom severity and claimant credibility is entitled to "great weight." See Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). "[T]he ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks omitted).

In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis. See Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009); Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment [that] could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter, 504 F.3d at 1036. If so, the ALJ may not reject a claimant's testimony "simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, if the claimant meets the first test, the ALJ may discredit the claimant's subjective symptom testimony only if he makes specific findings that support the conclusion. Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010). Absent a finding or affirmative evidence of malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. Lester, 81 F.3d at 834; Ghanim v. Colvin, 763 F.3d 1154, 1163 & n.9 (9th Cir. 2014). The ALJ must consider a claimant's work record, observations of medical providers and third parties with knowledge of claimant's limitations, aggravating factors, functional restrictions caused by symptoms, effects of medication, and the claimant's daily activities. Smolen, 80 F.3d at 1283-84 & n.8. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." Burch, 400 F.3d at 681.

The ALJ may also use ordinary techniques of credibility evaluation, such as considering the claimant's reputation for lying and inconsistencies in his statements or between his statements and his conduct. Id. at 1284; Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).

///

## 2. Analysis

Following the two-step process outlined above, the ALJ found as follows:

> The credibility of the claimant's allegations regarding the severity of his symptoms and limitations is diminished because those allegations are greater than expected in light of the objective evidence of record. Even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, in view of the relatively benign medical evidence, discussed below.

AR 31.

The ALJ gave three clear and convincing reasons for discounting Plaintiff's credibility: (1) the "relatively benign" medical evidence that did not support Plaintiff's allegations concerning the severity of his pain, (2) despite his alleged pain, Plaintiff engaged in a "relatively normal level of daily activity;" and (2) Plaintiff chose to receive routine, conservative, and non-emergency treatment over a number of years. AR 31.

    a.    The "relatively benign" medical evidence of record did not support Plaintiff's allegations of disabling pain.

Plaintiff contends that the ALJ's justification for discounting Plaintiff's credibility "because of the lack of objective evidence in the record lacks merit." Dkt. 21 at 19.

Again, the Court disagrees. First, the ALJ's factual determination that there is a lack of objective evidence in the record supporting Plaintiff's claim of disabling pain is supported by substantial evidence. Over the course of three pages, the ALJ expressly discussed in detail how the "relatively benign" objective clinical findings did not support the degree of limitation Plaintiff had alleged. See AR 31-33; see also Reddick v. Chater, 157 F.3d 715, 725 (9th Cir.

1998) (An ALJ may resolve questions of credibility "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings"); Rodriguez v. Colvin, No. 13-0549, 2013 WL 6797896, at *3 (C.D. Cal. Dec. 20, 2013) (finding that ALJ properly discounted claimant's credibility in part because record contained relatively benign evidence). As discussed above, the ALJ referenced Plaintiff's MRIs of the knees, lumbar and cervical spine, x-rays of the lumbar and cervical spine, and examinations by Drs. Tamayo, Singer, and Aun. AR 31. The record showed mild-to-moderate findings that did not support Plaintiff's allegations of disabling pain. AR 33.

   Second, the ALJ did not rely solely on the lack of supporting medical evidence. As discussed below, the ALJ gave two other clear and convincing reasons to discount Plaintiff's credibility concerning the severity and limiting effects of his pain. The ALJ was permitted to consider the lack of supporting medical evidence as a factor confirming his other two reasons. See Burch, 400 F.3d at 681; Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."); Social Security Ruling 96–7p (same).

    b.  Plaintiff's daily activities were inconsistent with his claims of disabling pain.

   The ALJ noted that despite Plaintiff's alleged disabling pain, he "engaged in a relatively normal daily activity and interaction." AR 31. Plaintiff testified to driving, watching television, and using a computer. AR 31 (citing AR 81, 85, 86). In a function report, he admitted that he took care of his wife and children, prepared meals, did house cleaning and laundry, went out daily, went shopping, visited relatives, and went to church. AR 31 (citing

AR 179-86). The ALJ also referenced Plaintiff's report to psychiatrist Dr. Jobst Singer stating that he shopped, cooked, dressed and bathed himself without assistance, went to church, and exercised. AR 31, 33 (citing AR 382). At the administrative hearing, Plaintiff testified that he went grocery stopping two or three times per week. AR 79.

That Plaintiff maintained a reasonably normal level of daily activities was a clear and convincing reason to discount his credibility, even if his impairments made those activities somewhat more challenging. See Burch, 400 F.3d at 681 (noting that ALJ may discredit allegations of disability on basis that claimant engages in daily activities involving skills that could be transferred to the workplace); Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990) (as amended) (finding that the claimant's ability to "take care of her personal needs, prepare easy meals, do light housework and shop for some groceries . . . may be seen as inconsistent with the presence of a condition which would preclude all work activity") (citing Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989)); Molina, 674 F.3d at 1113 ("Even where [claimant's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.").

        c.    Plaintiff received routine, conservative, and non-emergency treatment since the alleged onset date.

In assessing the claimant's credibility, an ALJ may also consider evidence of conservative treatment in discounting testimony regarding the severity of an impairment. See Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007). Here, the ALJ determined that Plaintiff had not "generally received the type of medical treatment one would expect for a totally disabled individual" and noted Plaintiff's conservative treatment, including pain medication. AR 31-33. Plaintiff testified that when he feels pain, he uses a TENS unit, ices

his back, applies creams including "Bengay" and "Tiger Balm," and takes Vicodin twice per day. AR 77-81; see Warre, 439 F.3d at 1006 ("Impairments that can be controlled effectively with medication are not disabling."); Medel v. Colvin, No. 13-2052, 2014 WL 6065898, at *8 (C.D. Cal. Nov. 13, 2014) (affirming ALJ's characterization of claimant's treatment as conservative where his medical records showed that he had been "prescribed only Vicodin and Tylenol for his allegedly debilitating low-back pain."); Morris v. Colvin, No. 13-6236, 2014 WL 2547599, at *4 (C.D. Cal. June 3, 2014) (ALJ properly discounted credibility in part because claimant received conservative treatment consisting of use of TENS unit and Vicodin).

Therefore, the ALJ's finding that Plaintiff's treatment was inconsistent with the claimed severity of his pain is supported by substantial evidence, and it provides another clear and convincing reason for discounting Plaintiff's testimony. See Burch, 400 F.3d at 681.

On appellate review, this Court is limited to determining whether the ALJ properly identified reasons for discrediting Plaintiff's credibility. Smolen, 80 F.3d at 1284. The lack of evidence to support the severity of Plaintiff's pain allegations in the medical evidence, his daily activities, and his conservative treatment were proper and sufficiently specific bases for discounting his claims of disabling symptoms, and the ALJ's reasoning was clear and convincing. See Tommasetti v. Astrue, 533 F.3d 1035, 1039-40 (9th Cir. 2008); Houghton v. Comm'r Soc. Sec. Admin., 493 F. App'x 843, 845 (9th Cir. 2012). Because the ALJ's findings were supported by substantial evidence, this Court may not engage in second-guessing. See Thomas, 278 F.3d at 959; Fair, 885 F.2d at 604.

Remand is not warranted.

/ / /
/ / /

## IV.
## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED and the action is DISMISSED with prejudice.

Dated: February 16, 2016

*/s/ Karen E. Scott*
_____
KAREN E. SCOTT
United States Magistrate Judge